UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEORGE A. REESE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:17-cv-02710-JMS-TAB |
| | ) |
| DUSHAN ZETECKY Superintendent, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner George A. Reese is serving a 70-year sentence for his 2012 Harrison County, Indiana conviction for child molestation. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Reese's petition for a writ of habeas corpus is **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

**I. Factual and Procedural Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct appeal, the Indiana Court of Appeals summarized the relevant facts:

> K.J., born in March 1996, lived with her family in New Albany, Floyd County. In May 2008, the family met Reese at a cookout. Reese moved in with them in New Albany, and when they moved in June 2008 to a four-bedroom one-bathroom house in Palmyra, Harrison County, Reese moved with them. The household in Palmyra consisted of five children and seven adults: K.J., her older brother R.J., her older sister L.J., her younger brother M.J., her younger sister S.J., her father Robert, her stepmother Christina, her stepmother's cousin Tommy, Tommy's wife Angela, Tommy's brother Michael Priddy, Michael Devore, and Reese. While in Palmyra, Reese asked Robert and Christina if they knew "where he could get some young pussy." Tr. p. 1087. Robert and Christina said no.

Reese, who was fifty-two years old, flirted with twelve-year-old K.J., bought her ice cream and other items, and treated her differently from the other children. He also hugged her, which made her uncomfortable.

Robert was cooking out in the backyard one day when he sent K.J. into the kitchen for some ketchup. Upon walking into the kitchen, she saw Reese there. Reese asked K.J. to give him a blow job and pulled down his pants. Scared, K.J. knelt down and put her mouth on his penis. When S.J. appeared at the back door and saw them, K.J. stopped and went to her room, mad and humiliated that her little sister had to see her like that.

About a month after the family moved to Palmyra, S.J. told Christina what she had seen. When Robert learned about it, he confronted Reese, who admitted what he had done with K.J. Robert kicked Reese out of the house.

Robert invited Reese back to Palmyra sometime after the wind storm in September 2008 because he wanted to find out his last name. At some point, K.J. told L.J. about what Reese made her do. L.J. eventually stuck a knife to Reese's throat and ordered him out of the house. When Robert and Christina asked where Reese was, L.J. said she put a knife to his throat and kicked him out because he had been making K.J. do things to him. Robert called Reese and threatened him.

When Reese lived with the family, he gave them money for groceries and also bought them an above-ground pool. Several months after L.J. kicked him out at knifepoint, Reese called Robert and offered to buy the family some furniture. Robert said they did not need anything from him. Reese then asked to talk with K.J. Robert allowed it but monitored the call from another phone in the house. Reese asked K.J. "how his dick tasted in her mouth." *Id.* at 1085. Robert angrily interjected that he would rip Reese's heart out and feed it to him. Reese hung up.

Indiana State Police Detective William Wibbels began investigating the case in November 2009. During his investigation, he spoke with K.J., who had since been removed from the home and was staying at a youth shelter. K.J. told Detective Wibbels that Reese made her perform oral sex on him about two hundred times. The State filed numerous charges against Reese but dismissed all but one count of Class A felony child molesting and one count of being a habitual offender. Before trial, Reese filed a motion in limine seeking to prohibit the State from presenting evidence of his alleged uncharged misconduct, which the court granted. Reese was tried in February 2012, but the jury deadlocked and the court declared a mistrial. Before the second trial, Reese took a polygraph examination, which he had been demanding to take since he was first charged. The examiner asked Reese in three different ways whether he had engaged in oral sex with K.J. Each time, Reese responded no and the examiner determined he was being untruthful.

K.J. and others testified for the State on retrial. K.J. testified that Reese asked her for a blow job and pulled down his pants, and she complied. On cross, Reese verified with K.J. that she had initially told Detective Wibbels that she was forced to perform oral sex on Reese about two hundred times but was now telling the jury that it happened only once. The following exchange then occurred:

> Q: Why would you lie to Officer Wibbels and tell him it happened two hundred times and then today say it only happened once?
> A: We were talking about several different me [sic] so ...
> Q: Okay. So if you're talking about several different people that means it's okay to lie about what George did to you?
> A: It wasn't practically lying.
> Q: Pardon me?
> A: It wasn't lying. It was mis-confusion.

*Id*. at 833. Reese then pointed out several inconsistencies between K.J.'s deposition testimony and trial testimony. On redirect, K.J. acknowledged the inconsistencies but testified that she had never wavered about the fact that Reese put his penis in her mouth when she was twelve years old. She further said that she had been abused by a lot of men and that it was difficult to keep everything straight. On recross, K.J. testified that five men, including Reese, had sexually abused her. On redirect, the State asked K.J. whether there were certain things she could not discuss at trial, and K.J. responded affirmatively. She said that those rules made it more difficult to answer questions.

Reese and others testified for the defense. Reese denied that any oral sex with K.J. occurred. He stated that the last time he stayed with K.J.'s family was for a few days in October 2008. One morning during that time, he thought he heard Robert asking K.J.'s sister L.J. in the kitchen, "[D]o you want me to lick your pussy[?]" *Id*. at 1649. Reese testified that he confronted Robert about it by phone in February or March 2009, and Robert hung up on him. Reese claimed that no one thought he had done anything wrong until he accused Robert of wrongdoing.

The jury found Reese guilty of Class A felony child molesting and subsequently found him guilty of being a habitual offender. The trial court sentenced him to seventy years: forty years for the Class A felony enhanced by thirty years for the habitual offender finding.

*Reese v. State*, 988 N.E.2d 405, 2013 WL 2293671, *1-3 (Ind. Ct. App. 2013).

Mr. Reese appealed raising three issues: (1) whether the prosecutor committed misconduct by repeatedly informing the jury that inadmissible evidence was being withheld; (2) whether the State injected improper vouching testimony to bolster the victim's credibility; and (3) whether the

trial court erred in determining that Mr. Reese opened the door to uncharged and highly prejudicial misconduct evidence. On May 23, 2013, the Indiana Court of Appeals affirmed Mr. Reese's conviction and sentence. *Id.* Mr. Reese sought further review by the Indiana Supreme Court. The Indiana Supreme Court denied transfer on August 22, 2013.

On October 21, 2013, Mr. Reese petitioned *pro se* for state post-conviction relief. He filed an amended petition by counsel on April 8, 2016, alleging ineffective assistance of trial counsel. The trial court denied the petition on August 29, 2016, after an evidentiary hearing.

Mr. Reese appealed, arguing that trial counsel was ineffective for failing to object to the prosecutor remarking to the jury that the "rules" prevented L.J. from testifying truthfully, and by further noting that K.J. was bound by the same rules. On February 27, 2017, the Indiana Court of Appeals affirmed the denial of post-conviction relief, determining that Mr. Reese's attorney had not provided ineffective assistance. *Reese v. State*, 81 N.E.3d 697, 2017 WL 751235 (Ind. Ct. App. 2017). Mr. Reese sought review from the Indiana Supreme Court, but that court denied transfer on May 15, 2017.

On August 9, 2017, Mr. Reese filed this petition for a writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Reese's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

## III. Discussion

Mr. Reese raises four grounds in his petition: (1) whether the prosecutor committed misconduct when he repeatedly informed members of the jury that inadmissible evidence was being withheld from them; (2) whether the State injected improper vouching testimony to bolster the credibility of the victim; (3) whether the trial court abused its discretion when it held that defense counsel opened the door to uncharged conduct; and (4) whether his trial counsel was ineffective when she failed to object to what the Court of Appeals held to be prosecutorial misconduct that placed Mr. Reese in grave peril and likely had a persuasive effect on the jury.

Respondent argues that grounds one and two are "procedurally defaulted" because they were disposed of by the Indiana Court of Appeals through application of an independent and adequate state law ground, ground three raises no issues of federal law, and the Indiana Court of Appeals reasonably applied *Strickland* to Mr. Reese's claim of ineffective assistance of counsel.

### A. State Law: Grounds One, Two, and Three

"A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). This doctrine is premised on the rule that federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state-law ground precluding review by a federal habeas court "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. Therefore, "[e]rrors of state law in and of themselves are not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (citation and quotation marks omitted).

*1. Ground One*

Mr. Reese's first ground for relief argues that the prosecutor committed misconduct when he repeatedly informed members of the jury that inadmissible evidence was being withheld from them. On the issue, the Indiana Court of Appeals held:

> In reviewing a properly preserved claim of prosecutorial misconduct, we determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he would not have been otherwise subjected. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision rather than the degree of the impropriety of the conduct. [*Delarosa v. State*, 938 N .E.2d 690, 696 (Ind. 2010).] To preserve a prosecutorial misconduct claim, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Castillo*, 974 N.E.2d at 468. Failure to request an admonishment or a mistrial waives the claim unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id*. Reese did not request an admonishment or a mistrial after any of the alleged instances of prosecutorial misconduct. He therefore operates under the heavy burden of showing fundamental error.
> 
> …
> 
> …Still, the jury here might have reasonably inferred that the State implied it had additional evidence of guilt not revealed to the jury, and thus its statements constituted misconduct. Moreover, this misconduct had a probable persuasive effect on the jury's decision and thus placed Reese in grave peril. We therefore conclude that the State committed prosecutorial misconduct.
> 
> Unlike the defendant in *Johnson*, though, who had objected to the prosecutor's remarks and moved for a mistrial, Reese must show fundamental error. As noted earlier, the fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Delarosa*, 938 N.E.2d at 694. In addition, harm is not shown by the fact that the defendant was ultimately convicted; rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Baker v. State*, 948 N.E.2d 1169, 1179 (Ind. 2011). "Our task is to look at all that happened, including the erroneous action, and decide whether the error had substantial influence upon the verdict to determine whether the trial was unfair." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994).

> …
>
> …Although we determine the State committed prosecutorial misconduct, we ultimately conclude that Reese nonetheless received a fair trial.

*Reese*, 2013 WL 2293671 at *8-11.

The decision by the state court rests on a state law ground that is independent of any federal question and is adequate to support the judgment. That is the State committed prosecutorial misconduct, but because Reese failed to object at trial, he was required to show fundamental error to obtain relief. He was unable to make such a showing. Because Mr. Reese fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is not entitled to habeas corpus relief on this ground.

   *2.   Ground Two*

New, Mr. Reese argues that the State injected improper vouching testimony to bolster the creditability of the victim. On this issue, the Indiana Court of Appeals held:

> Reese now contends that Newton, Killen, and Detective Wibbels gave vouching testimony in violation of Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Vouching testimony is considered to be an invasion of the province of the jurors in determining the weight to be given to a witness's testimony. *Palilonis v. State*, 970 N.E.2d 713, 729 (Ind. Ct. App. 2012), *trans. denied*. The Indiana Supreme Court has recently declined to carve out an exception to Rule 704(b) for child victims of alleged sexual abuse. *See Hoglund v. State*, 962 N.E.2d 1230, 1236–37 (Ind. 2012).
>
> …
>
> Reese failed to object to any of this testimony at trial. He thus claims the admission of this evidence constitutes fundamental error. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) ("Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error."). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Delarosa v. State*, 938 N .E.2d 690, 694 (Ind.

2010). The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Id*. This exception is available only in egregious circumstances. *Id*.

Reese claims this case is like *Gutierrez v. State*, 961 N.E.2d 1030 (Ind. Ct. App. 2012), and *Lainhart v. State*, 916 N.E.2d 924 (Ind. Ct. App. 2009), both of which involved vouching testimony resulting in fundamental error…

The testimony Reese directs us to here is of a vastly different character. None of the statements implied a belief that K.J. was truthful or credible. The State elicited general, non-specific statements about the frequency of fabrications and common reasons for them. And where it elicited more specific statements, none of the responses gave opinions on K.J.'s truthfulness or credibility….

…

Reese has failed to show error, let alone fundamental error.

*Reese*, 2013 WL 2293671 at *4-6.

The decision by the state court rests on a state law ground that is independent of any federal question and is adequate to support the judgment. Because Mr. Reese fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is also not entitled to habeas corpus relief on this ground.

*3. Ground Three*

Third, Mr. Reese argues that the trial court abused its discretion when it held that defense counsel opened the door to uncharged conduct. On the issue, the Indiana Court of Appeals held:

> Reese now contends that the trial court abused its discretion by admitting this uncharged misconduct evidence in violation of Indiana Evidence Rule 404(b), which states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." For evidence of other crimes, wrongs, or acts to be admissible, a court must: (1) determine that the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Ortiz v. State*, 741 N.E.2d 1203, 1208 (Ind. 2001). Further, otherwise inadmissible evidence may be admitted where the defendant opens the door to questioning on that evidence. *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009). The door may be opened

9

> when the trier of fact has been left with a false or misleading impression of the facts. *Id*.
>
> As he claimed before the trial court, Reese argues he did not open the door to evidence of his uncharged misconduct in Floyd County by asking L.J. whether she had ever seen him do anything to K.J. because it was clear from the context of his question that he was only asking about the charged abuse in Harrison County. Reese may have intended his question to be limited to whether L.J. had ever seen him engage K.J. in oral sex in Harrison County; however, what he asked was the more general question of whether L.J. had ever seen him do anything to K.J. When L.J. answered that she had not, Reese pointed out that her deposition testimony stated otherwise. This made it appear that L.J. was a liar even though she was prohibited by the order in limine from saying she had seen Reese do things to K.J. in Floyd County. Regardless of how Reese may have limited his questioning or provided "context" through other questions, the jury was left with the affirmative yet false impression that L.J. had never seen Reese do anything to K.J. The State was thus entitled to elicit generalized testimony that she had in fact seen Reese do something to K.J. but that it occurred in Floyd County.
>
> Reese also argues he did not open the door to evidence of his uncharged misconduct in Floyd County by asking L.J. about her dislike of him. We disagree. …
>
> We therefore conclude that the trial court did not abuse its discretion by determining that Reese opened the door to evidence of his uncharged misconduct.

*Reese*, 2013 WL 2293671 at *7-8.

The decision by the state court rests on a state law ground that is independent of any federal question and is adequate to support the judgment. Because Mr. Reese fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is not entitled to habeas corpus relief on this ground.

### B.     Ground Four: Ineffective Assistance of Trial Counsel

Finally, Mr. Reese argues that his trial counsel was ineffective when she failed to object to what the Court of Appeals held to be prosecutorial misconduct that placed Mr. Reese in grave peril and had a "probably persuasive effect" on the jury. His claim of ineffective trial counsel was previously raised in his petition for post-conviction review.

10

> *Strickland v. Washington,* 466 U.S. 668, 684 (1984), supplies the clearly established federal law. This United States Supreme Court case governs a claim of ineffective assistance of counsel.
>
>> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).
>
> *Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals applied the *Strickland* standard. *Reese*, 2017 WL 751235 at *3-4. The court also explained the standard for reviewing ineffective assistance of counsel for failing to object: "a petitioner must establish that the trial court would have sustained the objection had one been made and that he was prejudiced by the failure to object." *Id*. at *4.

The Indiana Court of Appeals first noted that in its prior opinion in Mr. Reese's direct appeal, it had found that the prosecution's misconduct had "a probable persuasive effect on the jury's decision and thus placed Reese in grave peril," but that prosecutorial misconduct did not amount to fundamental error. *Id.* at *5. It acknowledged that "fundamental error and prejudice for ineffective assistance of trial counsel present two substantively different questions." *Id.* It

11

further concluded that "when a claim of ineffective assistance of trial counsel is based on a failure to object, and that error was advanced as fundamental error on direct appeal, a finding that the error did not rise to fundamental error does not automatically rule out the possibility that the error resulted in prejudice sufficient to establish ineffective assistance." *Id*.

Applying these standards, the Indiana Court of Appeals held:

> After considering the facts of the underlying case coupled with our prior conclusions through the lens of ineffective assistance prejudice, we conclude that Reese has failed to prove that he was prejudiced, i.e., that there is a reasonable probability that but for the prosecution's misconduct, the result of the proceeding would have been different. *Reed*, 866 N.E.2d at 769. As is outlined in our opinion on direct appeal, the record revealed that K.J.'s apparent confusion which led to some inconsistencies between her deposition and trial testimony stemmed from the fact that she was subjected to extensive sexual abuse by multiple men. We noted that given his line of questioning on cross-examination, Reese opened the door to rehabilitative testimony on redirect. Importantly, we further noted that with respect to the charged misconduct, K.J.'s testimony was consistent. She did not waver in her testimony that Reese had subjected her to sexual abuse when she was twelve years old by putting his penis in her mouth.
>
> Upon review of both the record and our prior conclusions on direct appeal, we conclude that Reese has failed to prove that he was prejudiced by his trial counsel's allegedly deficient performance. Again, a petitioner's failure to satisfy either prong will cause his ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Given that Reese has failed to prove prejudice, we conclude that Reese has failed to prove that he suffered ineffective assistance of trial counsel.

*Id.* at *6.

This assessment—resting on the prejudice prong of a claim of ineffective assistance of counsel—is compatible with the federal *Strickland* standard. And because this is a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011). Accordingly, Mr. Reese is not entitled to habeas relief on this ground.

## IV. Conclusion

This Court has carefully reviewed the state record in light of Mr. Reese's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.

Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Reese's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 3/26/2018

*[Signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

GEORGE A. REESE
862207
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

James Blaine Martin
INDIANA ATTORNEY GENERAL
james.martin@atg.in.gov